UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**REGINALD ERVIN,**

       **Plaintiff,**              **CIVIL ACTION NO. 15-cv-13352**

       **v.**                        **DISTRICT JUDGE MARIANNE O. BATTANI**

**COMMISSIONER OF**         **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

       **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Reginald Ervin seeks judicial review of Defendant Commissioner of Social Security's determination that he is not entitled to social security benefits for his physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 14) and Defendant's Motion for Summary Judgment (docket no. 17). The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 2.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

**I.    RECOMMENDATION**

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 14) be GRANTED IN PART and Defendant's Motion for Summary Judgment (docket no. 17) be DENIED. It is further recommended that this matter be remanded

for further consideration and explanation of how Plaintiff's major depressive disorder and moderate difficulties in concentration, persistence, or pace affect Plaintiff's RFC.

## II. PROCEDURAL HISTORY

Plaintiff protectively filed applications for a period of disability, disability insurance benefits, and supplemental security income on April 15, 2010; Administrative Law Judge (ALJ) Roy L. Roulhac issued an unfavorable decision with regard to those applications on September 13, 2011. (TR 92-100.) Plaintiff then protectively filed applications for a period of disability, disability insurance benefits, and supplemental security income on May 17, 2012, alleging disability beginning the day after ALJ Roulhac's decision, September 14, 2011, due to neck and spine pain, numbness in his hands and feet, sharp pain throughout his body, a bullet in his spine, nerve damage in his legs and arms, and carpal tunnel syndrome. (TR 166-75, 217, 222.) The Social Security Administration denied Plaintiff's claims on September 4, 2012, and Plaintiff requested a *de novo* hearing. (TR 108-33, 146-48.) On October 16, 2013, Plaintiff appeared with a representative and testified at the hearing before ALJ Richard L. Sasena. (TR 27-63.) In a March 6, 2014 decision, the ALJ found that Plaintiff was not entitled to benefits because he was capable of performing a significant number of jobs in the national economy. (TR 9-22.) The Appeals Council declined to review the ALJ's decision (TR 1-3), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment, which are currently before the Court.

## III. HEARING TESTIMONY AND MEDICAL EVIDENCE

In his brief, Plaintiff sets forth the procedural history of this matter and provides a brief statement of facts, which primarily consists of a summary of his subjective complaints and is not supported by citations to the record. (Docket no. 14 at 8-9.) The ALJ summarized Plaintiff's

2

hearing testimony, Plaintiff's medical record, and the vocational expert's (VE's) testimony in his decision. (TR 13-14, 15-19, 21.) Defendant adopts the ALJ's recitation of the facts. (Docket no. 17 at 4.) There are no material inconsistencies between the ALJ's summary of the facts and the record; therefore, the undersigned will incorporate the summary by reference. Additionally, the undersigned has conducted an independent review of Plaintiff's medical record and the hearing transcript and will include comments and citations as necessary throughout this Report and Recommendation.

## IV.   ADMINISTRATIVE LAW JUDGE'S DETERMINATION

First, the ALJ noted that under Social Security Acquiescence Rulings 98-3(6) and 98-4(6), he was bound by the findings of the previous ALJ under principles of *res judicata* in the absence of new and material evidence of changed circumstances. (TR 10 (citing Acquiescence Ruling 98-3(6), 63 FR 29770-01, 1998 WL 274051 (Soc. Sec. Admin. June 1, 1998); Acquiescence Ruling 98-4(6), 63 FR 29771-01, 1998 WL 274052 (Soc. Sec. Admin. June 1, 1998).) He then found that Plaintiff had presented new and material evidence, including mental health treatment notes and the results of a consultative examination, which warranted a change in Plaintiff's severe impairments and residual functional capacity (RFC). (TR 10.) The ALJ added that Plaintiff's submissions and hearing testimony warranted a revision of Plaintiff's past relevant work. (TR 10.)

Next, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014 and that he had engaged in substantial gainful activity during the alleged period of disability, from July 1, 2012 to September 30, 2012. (TR 12.) The ALJ also found that Plaintiff suffered from the following severe impairments: degenerative disc disease, carpal tunnel syndrome, major depressive disorder, and polysubstance dependence, but

3

his impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 12-14.) The ALJ then found that Plaintiff had the following RFC:

> [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) in that the claimant can lift or carry ten (10) pounds occasionally and less than ten (10) pounds frequently, can stand and/or walk about two (2) hours and can sit about six (6) hours during an eight hour workday, except: the claimant must be allowed to alternate between sitting and standing every fifteen (15) minutes; the claimant must be allowed to use a cane for walking more than a few feet; the claimant can occasionally balance, stoop, kneel, crouch, crawl, and climb; the claimant can frequently handle, bilaterally; the claimant must avoid exposure to unprotected heights and vibrating tools; and the claimant is limited to work consisting of simple, routine, repetitive tasks.

(TR 14-19.) Subsequently, in reliance on the VE's testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 20-21.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from September 14, 2011, through the date of the decision. (TR 10, 21-22.)

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try

cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

      **B.**     **Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)     Plaintiff was not presently engaged in substantial gainful employment; and

(2)     Plaintiff suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

5

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

    **C.**    **Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is

6

reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed for an award of benefits under sentence four because "the RFC determination by the ALJ did not accurately portray [Plaintiff's] physical and mental impairments and substantial treatment." (Docket no. 14 at 10-14.) In making this argument, Plaintiff makes several general accusations, such as "[t]he ALJ only states conclusions and never gives any reasoning throughout his decision" and "[t]he ALJ makes no attempt to allow the reader a fair and unbiased account of the medical evidence and analysis," but he does not cite to record evidence or medical assessments to support these claims. (*Id*. at 12.) Specifically, Plaintiff challenges the ALJ's assessment of Plaintiff's subjective complaints of pain, degenerative disc disease, use of a cane, and mental impairments. (*Id*. at 10-13.)

### 1. *The ALJ's Assessment of Plaintiff's Subjective Complaints of Pain*

Plaintiff asserts that "[t]he ALJ never reject[ed] Plaintiff's severe complaints of pain but never d[id] he evaluate it properly either" and that the ALJ did not evaluate Plaintiff's severe fatigue and chronic pain in accordance with SSR 96-7p. (Docket no. 14 at 10-11, 11-12.) "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r*, 127 F.3d 525, 531 (6th Cir. 1997). But credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."

SSR 96–7p.[1]  "It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "[T]he adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *Id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). The ALJ will consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for symptom relief, (6) any measures used to relieve the symptoms, and (7) functional limitations and restrictions due to the pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p; *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors). As part of his argument, Plaintiff asserts that the ALJ failed to consider these factors. (Docket no. 14 at 11-12.)

Here, the ALJ considered and discussed Plaintiff's hearing testimony and other subjective complaints of pain in conjunction with the record evidence, and he found that Plaintiff's allegations were not entirely credible. (TR 15-19.) For example, the ALJ noted Plaintiff's hearing testimony that he experienced neck pain and back pain with radiation into his legs, as

---

[1] SSR 96-7p has been superseded by SSR 16-3p, effective March 28, 2016. *See* SSR 16-3p, 2016 WL 1119029, at *1; 2016 WL 1237954. Nevertheless, because the ALJ's decision in this matter was rendered prior to the effective date of SSR 16-3p, the ALJ was obligated to comply with SSR 96-7p. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) ("The Act does not generally give the SSA the power to promulgate retroactive regulations.")

8

well as numbness and tingling in his upper extremities. (TR 15.) The ALJ also noted Plaintiff's testimony that he took naps during the day.[2] (TR 16.) With regard to the record evidence, the ALJ acknowledged Plaintiff's documented history of receiving treatment for back pain dating back to 2010, including epidural steroid injections, physical therapy, and prescription medication. (TR 16.) The ALJ also pointed out that in September 2011, Plaintiff's treating physician, Irwin Lutwin, D.O., reported Plaintiff's complaint of low back pain, but did not report any specific, clinical findings to support his opinion. The ALJ expounded that other than Dr. Lutwin's report, the record showed no evidence of any treatment from the alleged onset date of September 14, 2011 to August 22, 2012, the date of Plaintiff's first consultative examination with Cynthia Shelby-Lane, M.D. (TR 16-17.)

The ALJ then engaged in a discussion of Dr. Shelby-Lane's report and opinion. (TR 17.) With regard to Plaintiff's pain, the ALJ noted that Dr. Shelby-Lane observed only minimal tenderness to palpation in the lower lumbar area and no evidence of deficits in strength or sensation. (TR 17.) The ALJ also pointed out that while Plaintiff asserted that his neck and back pain was related to a history of gunshot wounds, with some bullet fragments remaining in his spine, Dr. Shelby-Lane noted that the diagnostic imaging did not identify any such fragments. (TR 17.) The ALJ considered that Dr. Shelby-Lane diagnosed Plaintiff with chronic neck pain, and he considered her opinions that the evidence supported Plaintiff's need to use a cane to reduce his pain and that Plaintiff may have difficulty standing for long periods of time, lifting, stooping, and squatting. (TR 17.) The ALJ then assigned Dr. Shelby-Lane's opinion great

---

[2] While Plaintiff argues that the ALJ failed to evaluate his complaints of fatigue, Plaintiff fails to support his argument with any citations to the record, and a review of the record evidence does not reveal any specific complaints of fatigue set forth by Plaintiff. The only vague reference to fatigue in the record is Plaintiff's testimony that he took naps during the day, which the ALJ considered in his decision. The Court is not obligated to scour the record to develop Plaintiff's argument regarding fatigue on his behalf, and it declines to do so. *See* **Error! Main Document Only.***Bush v. Astrue*, No. 12-11790, 2013 WL 1747807, at *14 (E.D. Mich. Jan. 25, 2013) (Grand, M.J.) (citation omitted).

weight and incorporated her opinions into Plaintiff's RFC by limiting Plaintiff to sedentary work, including lifting only ten pounds occasionally and less than ten pounds frequently, standing and/or walking only two hours per day, occasional balancing, stooping, kneeling, crouching, crawling, and climbing, and the use of a cane to walk more than a few feet. (TR 14-15, 17.) Furthermore, to accommodate Plaintiff's complaints of pain, the ALJ found that Plaintiff had moderate difficulties in concentration, persistence, or pace.[3] (TR 14.)

The ALJ also discussed Plaintiff's June 2013 appointment with Satish Khanzode, M.D., at which Plaintiff reported chronic neck and low back pain, but Dr. Khanzode observed that Plaintiff had a normal gait without any deficits in strength or sensation. (TR 17.) The ALJ further noted that Plaintiff continued to receive primary care through September of 2013, but none of the resulting treatment notes contain any useful clinical findings regarding the nature or severity of Plaintiff's alleged impairments. (TR 17.) The ALJ further discussed and discounted Plaintiff's subjective pain complaints as follows:

> As detailed above, the record shows that the claimant's treatment for his physical impairments during the period under consideration has been limited to primary care. The record also shows significant gaps in the claimant's treatment history. While the claimant attributes at least some of his physical pain to the bullet fragments that remain in his body from a shooting that occurred in 1998, diagnostic imaging shows no evidence of these fragments (Exhibits B8F/3, B4F, B9F). Further, despite these alleged gunshot wounds, the record shows that the claimant was able to work at substantial gainful activity levels for multiple years afterward, as recently as 2012 (Exhibit B6D). Moreover, the objective evidence, including two consultative examinations, while revealing some back pain, showed no significant deficits in strength or sensation.

(TR 18.) Notably, Plaintiff does not specifically contest or dispute any of the reasons set forth by the ALJ in discounting Plaintiff's subjective complaints.

---

[3] Plaintiff asserts that the ALJ "bizarrely" did not include any non-exertional limitations in the RFC related to Plaintiff's pain. (Docket no. 14 at 11.) The Court will address this argument below in conjunction with Plaintiff's argument that the ALJ did not account for Plaintiff's moderate difficulties in concentration, persistence, or pace in the RFC.

As discussed and cited above, the ALJ thoroughly discussed Plaintiff's subjective pain complaints and the record evidence related to those complaints. He then provided specific reasons for discounting Plaintiff's complaints in his decision, many of which apply the factors set forth in 20 C.F.R. § 404.1529(c)(3), § 416.929(c)(3), and SSR 96-7p. Thus, the ALJ's decision is sufficiently specific to make clear to Plaintiff and to the court the weight that he gave to Plaintiff's statements and the reasons for that weight. The ALJ's assessment of Plaintiff's subjective complaints of pain is supported by substantial evidence and should not be disturbed; Plaintiff's Motion should be denied in this regard.

2. *The ALJ's Analysis of Plaintiff's Degenerative Disc Disease*

Next, Plaintiff argues that the ALJ "did no" analysis of Plaintiff's degenerative disc disease. (Docket no. 14 at 11.) In the next sentence, Plaintiff contradicts himself by arguing that the ALJ "went out of his way to minimize the Plaintiff's degenerative disc disease." (*Id*.) Plaintiff also argues that when the ALJ was discussing Plaintiff's MRI results, he failed to mention that Plaintiff has "multilevel severe foraminal stenosis." (*Id*.) In fact, the ALJ did analyze Plaintiff's degenerative disc disease, including the test results Plaintiff refers to above, which were not generated by MRI as Plaintiff asserts, but by two CT scans of the cervical and lumbar portions of Plaintiff's spine. (TR 16 (citing TR 597-99).) The ALJ accurately summarized those results follows: "Diagnostic imaging performed in 2010, showed moderate-to-severe degenerative changes in the cervical spine and moderate left-sided facet arthrosis at L4-5 and L5-S1 (Exhibits B5F/1-3)." (TR 16.) Plaintiff is correct that the ALJ did not itemize the specific results of the scans in his decision, e.g., the multilevel severe foraminal stenosis, but an ALJ need not discuss every piece of evidence in the record. *Kornecky v. Comm'r of Soc. Sec.,* 167 F. App'x 496, 507-08 (6th Cir. 2006) (quoting *Loral Def. Sys.-Akron v. N.L.R.B.,* 200

F.3d 436, 453 (6th Cir. 1999)) ("[I]t is well settled that '[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'").

In analyzing Plaintiff's degenerative disc disease, the ALJ also considered Dr. Shelby-Lane's December 18, 2013 consultative examination of Plaintiff in conjunction with the results of x-rays taken the same day. (TR 17.) In doing so, the ALJ acknowledged that the x-rays showed advanced degenerative arthritis of the mid- and lower-cervical spine, but despite the observed degenerative changes, Dr. Shelby-Lane found no evidence of motor or sensory deficits. (TR 17.) Furthermore, as discussed in the preceding section, the ALJ thoroughly considered Plaintiff's complaints of back pain suffered as a result of his degenerative disc disease and assessed functional limitations in accordance with Dr. Shelby-Lane's medical opinion. Plaintiff's Motion should therefore be denied with regard to this issue.

### 3. The ALJ's Assessment of Plaintiff's Use of a Cane

Plaintiff argues that the ALJ committed significant legal error by failing to consider and properly analyze Plaintiff's use of a cane in the formulation of the RFC. (Docket no. 14 at 11.) Specifically, Plaintiff argues that the ALJ failed to determine whether both of Plaintiff's extremities are affected by his use of a cane, and where both extremities are affected, which is the case with Plaintiff, the occupational base is significantly eroded. (*Id.*) Plaintiff also argues that the ALJ erroneously failed to consider Plaintiff's ability to balance and his use of a back brace. (*Id.*)

Here, the ALJ explicitly considered Plaintiff's hearing testimony that he used a prescribed cane in conjunction with Plaintiff's contradictory report to consultative examiner, Dr. Shelby-Lane, that the cane was not prescribed. (TR 15-16.) The ALJ also discussed Dr. Shelby-

12

Lane's August 22, 2012 examination report, in which she observed that Plaintiff was using a back brace and a "self-acquired" cane, but she found that Plaintiff had only minimal tenderness to palpation in the lower lumbar area and that Plaintiff was able to walk slowly without the cane, with only a slight left-sided limp.  (TR 16-17.)  The ALJ then accorded great weight to Dr. Shelby-Lane's opinion that the evidence supported Plaintiff's need to use a cane to reduce his subjective complaints of pain.  (TR 17.)

Next, the ALJ considered the report from Dr. Shelby-Lane's December 18, 2013 consultative examination of Plaintiff.  (TR 17.)  The ALJ noted that although Plaintiff presented at the examination in a back brace and Dr. Shelby-Lane found that Plaintiff had tenderness in the lumbar spine and positive straight-leg raising at 50 degrees, Dr. Shelby-Lane found no evidence of spinal deformity, swelling, or muscle spasm.  (TR 17.)  The ALJ further noted that although Plaintiff brought a cane to the examination, Dr. Shelby-Lane indicated that Plaintiff did not use the cane and that he was able to tandem, heel, and toe walk, albeit slowly.  (TR 17.)  The ALJ then considered and assigned great weight to Dr. Shelby-Lane's opinion that Plaintiff could stand or walk for up to five hours in an eight-hour workday, despite his need to use a cane.  (TR 19.)  Notably, neither Dr. Shelby-Lane nor any other physician of record opined that Plaintiff's use of a back brace was medically necessary, and Plaintiff does not challenge the ALJ's assessment of Dr. Shelby-Lane's opinions.

The discussion above demonstrates that the ALJ took Plaintiff's cane-related statements as well as Dr. Shelby-Lane's reports and opinions into account in formulating Plaintiff's RFC and found, in relevant part, that Plaintiff "can stand and/or walk about two (2) hours and can sit about six (6) hours during an eight hour workday, except: [he] must be allowed to alternate between sitting and standing every fifteen (15) minutes; [he] *must be allowed to use a cane for*

13

*walking more than a few feet*; [and he] *can occasionally balance*, stoop, kneel, crouch, crawl, and climb." (TR 14 (emphasis added).) The ALJ then presented all of the limitations of the RFC, including Plaintiff's need to use a cane, in his hypothetical questions to the VE, and the VE testified that there are a significant number of jobs available in the national economy for a person with these limitations. (TR 55-56, 59-62.) Specifically, the VE testified that the hypothetical individual's need to use a cane to walk more than a few feet would not affect the number or type of jobs available to him because those jobs did not involve walking more than a few feet. (TR 56.) The undersigned finds that the ALJ appropriately addressed Plaintiff's use of a cane, use of a back brace, and ability to balance. Plaintiff's claims of error in this regard, particularly those regarding the erosion of the occupational base, fail.

> 4. *The ALJ's Assessment of Plaintiff's Mental Impairments*

Plaintiff argues that "[t]here is no mention in the RFC of the ALJ's findings that Plaintiff has major depressive disorder and moderate limitations in concentration, persistence, or pace." (Docket no. 14 at 12.) Plaintiff continues that the ALJ did not provide a discussion of the medical evidence related to his mental impairments or a function-by-function analysis in accordance with the regulations. (*Id*.) Plaintiff's secondary argument fails, however, because the ALJ did indeed discuss the medical evidence related to Plaintiff's mental health treatment, and, as Defendant points out, "'[a]lthough a function-by-function analysis is desirable, SSR 96–8p does not require ALJs to produce such a detailed statement in writing.'" *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) (quoting *Bencivengo v. Comm'r of Soc. Sec.,* 251 F.3d 153 (table), No. 00–1995 (3d Cir. Dec. 19, 2000)). "'[T]he ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the

14

record.'"  *Id*.  But an ALJ's failure to link the evidence to the ultimate RFC requires a reversal and sentence four remand.  *Meyer v. Comm'r of Soc. Sec.*, No. 10-cv-12963, 2011 WL 3440152, at *9 (E.D. Mich. Jun. 9, 2011) (quoting *Lowery v. Comm'r of Soc. Sec.*, 55 F. Appx. 333, 339 (6th Cir. 2003)) ("An ALJ ... must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning.").

Here, the ALJ discussed Plaintiff's mental health records from New Center Community Mental Health Services, including the formal psychiatric evaluation of Plaintiff conducted by Swarn Mahajan, M.D. in July 2013.  (TR 18 (citing TR 600-618).)  The ALJ noted that Dr. Mahajan diagnosed Plaintiff with major depressive disorder and polysubstance dependence but made virtually no clinical findings of any cognitive or emotional impairment, perceptual disturbances, or delusions.  The ALJ pointed out that Dr. Mahajan assigned Plaintiff a GAF score of 60, which is indicative of moderate difficulty in social, occupational, or school functioning, but that Dr. Mahajan did not find Plaintiff to be limited in performing any specific, work-related mental tasks.  The ALJ determined that these mental health records, combined with the records from Dr. Shelby-Lane's December 18, 2013 consultative examination of Plaintiff constituted new and material evidence that warranted a change in Plaintiff's severe impairments and RFC from the previous ALJ's decision.  (TR 10.)  Essentially, the ALJ added major depressive disorder and polysubstance dependence to Plaintiff's list of severe impairments, and a limitation to work consisting of simple, routine, repetitive tasks to Plaintiff's RFC.[4]  (*Compare* TR 94, 95 *with* TR 12, 14-15.)

One might presume, then, that the ALJ limited Plaintiff to simple, routine, repetitive tasks to accommodate for Plaintiff's major depressive disorder.  But, as previously discussed, the ALJ

---

[4] The ALJ later finds, and provides a full explanation for his finding, that Plaintiff's polysubstance abuse is not material to the evaluation of Plaintiff's claim.  (TR 16.)

15

also found that Plaintiff suffered from moderate difficulties in concentration, persistence, or pace as a result of his pain. (TR 14.) Frankly, then, it is not clear whether the ALJ limited Plaintiff to work consisting of simple, routine, repetitive tasks to accommodate for Plaintiff's major depressive disorder; to accommodate for Plaintiff's pain-related moderate difficulties in concentration, persistence, or pace; to accommodate for both issues; or to accommodate for some other impairment. Indeed, the ALJ does not discuss in his decision, nor is it evident, how or why Plaintiff's depression would correlate to a functional limitation of simple, routine, repetitive tasks, particularly when Plaintiff's own mental health provider did not assess any functional limitations to Plaintiff. Additionally, the ALJ neither explains how Plaintiff's moderate difficulties in concentration, persistence, or pace affect Plaintiff's RFC, nor does he explicitly incorporate those difficulties into his hypothetical questions to the VE. Thus, in this instance, the ALJ failed to articulate how the record evidence supported his determination that Plaintiff is limited to work consisting of simple, routine, repetitive tasks or how Plaintiff's major depressive disorder and moderate difficulties in concentration, persistence, or pace affect Plaintiff's RFC. Remand is warranted on this basis.

Furthermore, in this case, the RFC limitation to work consisting of simple, routine, repetitive tasks does not adequately account for the ALJ's finding that Plaintiff suffers from pain-related moderate difficulties in concentration, persistence, or pace. Moderate limitations in concentration, persistence, and pace must be conveyed to the VE through the ALJ's hypothetical, or the VE's responses are insufficient to provide support for the ALJ's decision. *Edwards v. Barnhart*, 383 F.Supp.2d 920, 929-31 (E.D. Mich. 2005). A hypothetical that includes "simple, routine, unskilled work" is not necessarily, by itself, sufficient to frame a moderate limitation in concentration, persistence, and pace. *See id.* Such a limitation may impact a claimant's ability

16

to meet quotas, stay alert, or work at a consistent pace even when performing simple, routine, unskilled jobs. *Id.* at 930. But there is no requirement that the ALJ specifically state that the claimant is "limited in concentration, persistence, or pace." *See Lewicki v. Comm'r of Soc. Sec.*, No. 09-11844, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010). The ALJ must create a hypothetical based on the facts of each individual case. *See id.*

Courts in this district draw a distinction between cases in which a medical expert finds a moderate deficiency in concentration, persistence, or pace from those in which the ALJ independently finds such a limitation. "When the ALJ has found such a limitation, the ALJ must incorporate these limitations into the hypothetical questions." *McPhee v. Comm'r of Soc. Sec.*, No. 11-13399, 2013 WL 1277889, at *2 (E.D. Mich. Mar. 27, 2013) (citations omitted). Courts are more likely to order a sentence-four remand in cases where the ALJ made the finding of moderate deficiencies in concentration, persistence, or pace in the absence of a medical opinion that found similar moderate deficiencies and indicated that the plaintiff was still capable of sustained work. *Cwik v. Comm'r of Soc. Sec.*, No. 10-15121, 2012 WL 1033578, at *10 (E.D. Mich. Feb. 23, 2012) (citing *Hicks v. Comm'r of Soc. Sec.*, No. 10-13643, 2011 WL 6000701, at *4 (E.D. Mich. Nov. 28, 2011)).

Here, there is no medical opinion finding that Plaintiff suffers from moderate difficulties in concentration, persistence, or pace. The ALJ made an independent finding in this regard based on Plaintiff's subjective complaints of pain, but he did not articulate how those difficulties would translate into Plaintiff's residual functional capacity to perform work-related tasks. The ALJ did not adequately address concentration, persistence, or pace limitations in his RFC assessment or in his hypothetical questions to the VE. Without discussion from the ALJ, the Court is not able to assess whether the VE's testimony constitutes substantial evidence.

17

Accordingly, Plaintiff's Motion should be granted with respect to this issue, and this matter should be remanded for further proceedings in consideration of the effect of Plaintiff's moderate difficulties with concentration, persistence, or pace on Plaintiff's RFC.

### 5. *Plaintiff's Other Arguments*

Plaintiff purportedly sets forth other arguments in his brief, such as the ALJ "never accurately defines the severe impairments nor does he state what limitations [Plaintiff] suffers from his severe impairments," "[t]he ALJ outright misstates and minimalizes Plaintiff's impairments throughout the decision without explanation," and "[t]he ALJ makes no attempt to allow the reader a fair and unbiased account of the medical evidence and analysis." (Docket no. 14 at 11, 12.)  Such arguments, however, are either completely undeveloped, incorrect, and/or made without performing a thorough review of the ALJ's decision.  "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (citation and internal quotation marks omitted).

## VI.    CONCLUSION

For the reasons stated herein, the court should GRANT IN PART Plaintiff's Motion for Summary Judgment (docket no. 14), DENY Defendant's Motion for Summary Judgment (docket no. 17), and remand this matter for further consideration and explanation of how Plaintiff's major depressive disorder and moderate difficulties in concentration, persistence, or pace affect Plaintiff's RFC.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: January 9, 2017　　　　　s/ Mona K. Majzoub
　　　　　　　　　　　　　　　MONA K. MAJZOUB
　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: January 9, 2017　　　　　s/ Lisa C. Bartlett
　　　　　　　　　　　　　　　Case Manager